**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
BETTY GENE ALI,                 )
                                )
          Plaintiff,            )
                                )
     v.                         )     Civil Action No. 02-2271 (RWR)
                                )
MID-ATLANTIC SETTLEMENT         )
SERVICES, INC. <u>et</u> <u>al</u>.,     )
_____)


<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Betty Gene Ali filed a motion for default judgment as to defendant Anthony Noble to which Noble responded by filing a motion to set aside entry of default, arguing that service had never been effected.  Ali also filed a motion for sanctions under Rule 11, Fed. R. Civ. P., for having to respond to Noble's motion to set aside entry of default which Ali deemed frivolous. Because service on Noble was effective, Ali's default judgment motion will be granted and a judgment of default will be entered if Noble does not file an answer on or before January 17, 2006. Because some of Noble's factual contentions betray a failure by his counsel to conduct a reasonable prior inquiry and some of his legal contentions are not warranted by existing law, Ali's motion for sanctions will be granted in part.

-2-

## BACKGROUND

Ali, an ailing widow, has sued Noble and his step-father, Richard L. Tolbert,[1] for their parts in an alleged scheme that swindled her in the sale of her Southeast Washington, D.C. home to Noble.  Ali seeks to have the sale rescinded.

Plaintiff's process servers delivered the summons and complaint multiple times in an effort to serve Noble, a law student attending the University of Pennsylvania at the time, but Noble never answered and asserts that service was never effected. During the 2002-2003 academic year, Noble lived in an apartment at 3131 Walnut Street, Philadelphia, Pennsylvania.  In June 2003, Noble's listing on the University of Pennsylvania internet directory was changed to an address on Cree Drive in Forest Heights, Maryland.  For the 2003-2004 academic year, Noble lived at 1624 Spruce Street, Apt. 1R in Philadelphia, the address to which his school directory listing was changed in the fall of 2003.  That listing included Noble's telephone number which Ali's counsel furnished to process servers at Best Legal Services in Philadelphia.

On November 13, 2002, process server Maurice Liggins left a copy of the summons and complaint with an adult woman who identified herself as Paula Noble, Noble's mother, at 113 Cree

---

[1]  Three other defendants have been voluntarily dismissed from the case.

-3-

Drive, Forest Heights, Maryland.  Liggins' affidavit dated
November 15, 2002 states that Paula Noble "admitted to living
there with and is the mother/co-occupant of the defendant."
Noble did not respond to the summons.  On May 13, 2003, a process
server left a copy of the summons and complaint with Edward
Bowman, the concierge at the 3131 Walnut Street apartment house
where Noble was then living while in school.  Bowman later told
Ali's counsel that Bowman accepted the papers from the process
server, called Noble in his apartment, and then "focused on
placing the documents . . . into the hands of Mr. Noble as soon
as possible."  Noble did not respond to the summons.  Then, on
September 23, 2003, process server Russell DaLonzo, Jr. from Best
Legal Services went to the 1624 Spruce Street apartment where
Noble was residing at that time.  DaLonzo's October 1, 2003
affidavit of service says "spoke to Mr. Nobles over the phone and
he stated put paper in the door and he'll get it."  Noble still
did not respond to the summons.

    Ali sought and obtained an entry of default by the clerk,
and filed a motion for default judgment.  In response to an
August 13, 2004 order directing Noble to show cause why Ali's
motion should not be granted, Noble filed a motion to set aside
entry of default, arguing that he was never properly served.
Noble's motion was denied without prejudice in an order that
explained:

-4-

> As a motion to vacate the entry of default, the motion
> is deficient since it is not accompanied by a verified
> answer as is required by Local Civil Rule 7(g).  As a
> response to the show cause order, the filing fails to
> address with factual particularity the affidavits by
> Maurice Liggins on November 15, 2002 and Russell
> Dalonzo, Jr. on October 1, 2003 showing service of
> process upon both Noble and his mother.  Asserting the
> legal conclusion that Noble "was not personally served
> and therefore not placed on legal notice" . . . does
> not suffice to rebut the facts in sworn affidavits
> supporting entry of default or show good cause why the
> entry of default should be vacated.

Order, Nov. 24, 2004, at 1-2 (citations omitted).  The order

directed Noble to file in further response to the August 13, 2004

show cause order, a memorandum and supporting affidavits that

answered all factual assertions advanced by plaintiff concerning

service of process upon him in Maryland and Pennsylvania.

Noble responded by filing a memorandum along with his

affidavit, the Liggins affidavit, the DaLonzo affidavit and the

process server workcard describing the delivery of process on

May 13, 2003 to Bowman, the apartment concierge, attached as

exhibits.  Noble's affidavit consisted of the following

statements:

> 1.   I have personal knowledge of the matters set forth
> in this affidavit.
>
> 2.   I currently reside at 1624 Spruce Street,
> Philadelphia, PA 19104 and have lived there for the
> last year.  Prior to my current residence, I resided in
> Tokyo, Japan (July 2003 - August 2003) and 3131 Walnut
> Street, Apt. 237 Philadelphia, PA 19104 and [sic] (June
> 2002 - July 2003).

-5-

3.   I have never been served with a summons or a
complaint in the case - Betty Gene Ali v Mid-Atlantic
Services, Inc. et al., Civil Action No. 02cv02271.

4.   I, categorically, deny ever having been served by
Maurice S. Liggins, Edward Bowman or Russell Dalzone
[sic] in the above-referenced case.

(Def.'s Notice of Filing Lengthy Exhibits, Ex. 5.)

Shortly thereafter, Ali filed a motion for sanctions against

Noble and his counsel seeking reimbursement for the costs

incurred in responding to Noble's motion to set aside entry of

default and in preparing and pursuing the motion for sanctions.

She argues that Noble's representations that he was never served

and had no legal notice of this litigation were made in bad

faith, and that his motion to set aside default was frivolous.

Noble responded to the motion for sanctions one month later only

after a show cause order was issued against him for failure to

file any timely response.

## DISCUSSION

I.   SERVICE OF PROCESS

The Federal Rules of Civil Procedure endorse multiple ways

to achieve service of a summons and complaint upon a party.

Service of process may be effected "by delivering a copy of the

summons and of the complaint to the individual personally or by

leaving copies thereof at the individual's dwelling house or

usual place of abode with some person of suitable age and

discretion then residing therein[,]" Fed. R. Civ. P. 4(e)(2), or

-6-

"pursuant to the law of the state . . . in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State[.]"  Fed. R. Civ. P. 4(e)(1).  Whether service is effective turns on the facts and circumstances of each case.  Where service complies precisely with the requirements of Rule 4(e), it will be effective for personal jurisdiction, even if the individual did not receive actual notice.  Smith v. Kincaid, 249 F.2d 243, 244 (6th Cir. 1957); Capitol Life Ins. Co. v. Rosen, 69 F.R.D. 83, 88 n.3 (E.D. Pa. 1975).  On the other hand, where the defendant has received actual notice of the action, "the provisions of Rule 4(e) should be liberally construed to effectuate service and uphold the jurisdiction of the court."  Karlsson v. Rabinowitz, 318 F.2d 666 (4th Cir. 1963); Rovinski v. Rowe, 131 F.2d 687, 689 (6th Cir. 1942) (same).  "The rules governing service of process are not designed to create an obstacle course for plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction."  TRW, Inc. v. Derbyshire, 157 F.R.D. 59, 60 (D. Col. 1994).  Rather, "the rules governing service of process are utilized for the purpose of providing a likelihood of bringing actual notice to the intended recipient," Minnesota Mining & Mfr'g Co. v. Kirkevold, 87 F.R.D. 317, 324 (D. Minn. 1980), and actual notice satisfies the due process notice requirement and provides the court with personal

-7-

jurisdiction.  <u>Frank Keevan & Sons, Inc. v. Callier Steel Pipe & Tube, Inc.</u>, 107 F.R.D. 665, 671 (S.D. Fla. 1985).  Where the defendant receives actual notice and the plaintiff makes a good faith effort to serve the defendant pursuant to the federal rule, service of process has been effective.  <u>Id</u>.  Good faith efforts at service are effective particularly where the defendant has engaged in evasion, deception, or trickery to avoid being served. <u>Id</u>.

> The service of process is not a game of hide and seek. Where service is repeatedly effected in accordance with the applicable rules of civil procedure and in a manner reasonably calculated to notify the defendant of the institution of an action against him, the defendant cannot claim that the court has no authority to act when he has willfully evaded the service of process.

<u>Electronics Boutique Holdings Corp. v. Zuccarini</u>, No. Civ. A. 00-4055, 2001 WL 83388, at *9 (E.D. Pa. Jan. 25, 2001).

Personal service of process under Rule 4(e)(2), permitting service by "delivering a copy of the . . . [papers] to the individual personally," does not require an "in hand" delivery and acceptance of the papers.  <u>Gambone v. Lite-Rock Drywall Corp. Advanced Constr. Material Corp.</u>, No. Civ. A. 01-1071, 2003 WL 21891584, at *4 (E.D. Pa. Aug. 7, 2003) (finding service effective when process server found defendant at his dwelling house and announced her business but defendant refused to accept personal service, and process server left papers under the door mat).  Personal service of process

-8-

should not become a game of wiles and tricks and a
defendant should not be able to defeat service simply
by refusing to accept the papers or instructing others
to reject service.  Even though a defendant refuses
physical acceptance of a summons, service is complete
if a defendant is in close proximity to a process
server under such circumstances that a reasonable
person would be convinced that personal service of the
summons is being attempted.  Delivery of a summons to
the person to be served may be accomplished by leaving
it in his general vicinity, such as on the floor inside
the residence near such person, informing him that the
process server is so doing.  A process server may leave
the summons outside the door of a structure, informing
the defendant he is so doing, where the defendant
interposes the door between himself and the process
server.

Id.  A defendant's "refusal to open the door does not invalidate

plaintiff's service.  Personal service need not be face to face

or hand to hand."  Villanova v. Solow, No. Civ. A. 97-6684, 1998

WL 643686, at *2 (E.D. Pa. Sept. 18, 1998) (deciding that

personal service was effective where the defendant refused to

open the door of his dwelling and the process server put the

papers through the mail slot in the front door); see also Novak

v. World Bank, 703 F.2d 1305, 1310 n.14 (D.C. Cir. 1983) ("When a

person refuses to accept service, service may be effected by

leaving the papers at a location, such as on a table or on the

floor, near that person.").

Service also may be effected by leaving copies of the papers

"at the individual's dwelling house or usual place of abode with

some person of suitable age and discretion then residing

therein[.]"  Fed. R. Civ. P. 4(e)(2).  For purposes of service

-9-

under this provision, an individual may have more than one

"'dwelling house or usual place of abode,' provided each contains

sufficient indicia of permanence."  Nat'l Dev. Co. v. Triad

Holding Corp., 930 F.2d 253, 257 (2d Cir. 1991).  An individual

need not be living in that place at that time in order for it to

qualify as his usual place of abode for purposes of Rule 4(e).  A

usual place of abode may be a college student's permanent home

address while the college student is away at college.  See

Hubbard v. Brinton, 26 F.R.D. 564, 565 (E.D. Pa. 1961); see also

Derbyshire, 157 F.R.D. at 60 (finding service effective when left

with an adult at the dwelling house at the address to which

defendant instructed his mail to be forwarded).  "When a

Defendant does not have a permanent place of residence, a Court

will consider whether he intended to return to the place of

service in order to determine whether it can be characterized as

his usual place of abode[.]"  Blue Cross and Blue Shield of

Michigan v. Chang, 109 F.R.D. 669 (E.D. Mich. 1986).  On the

other hand, an intention to return to the usual place of abode is

not critical to effective service when the individual has

received actual notice.  See Karlsson, 318 F.2d at 668.

     The validity of the service attempts in Philadelphia also

can be determined by Pennsylvania law under Rule 4(e)(1).

Service in Pennsylvania may be effected by handing a copy of the

papers to the defendant.  Pa. R. Civ. P. 402(a)(1).

-10-

Alternatively, service may be effected by handing a copy of the papers "(i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or (ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides."  Pa. R. Civ. P. (a)(2).

    A.   <u>Service at 113 Cree Drive</u>

The affidavit of service filed by Liggins shows that at 8:30 p.m. on November 13, 2002, Liggins left a copy of the summons, complaint and exhibits with Paula Noble, Noble's mother, at 113 Cree Drive, Forest Heights, Maryland.  According to Liggins' affidavit, Paula Noble confirmed that she resided at 113 Cree Drive, and "admitted to living there with and is the mother/co-occupant of the Defendant."  The information in the affidavit establishes that the service complied with the rule provision permitting service by leaving copies "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein."  Fed. R. Civ. P. 4(e)(2).

Noble does not deny, either through his affidavit or any other factual support, that 113 Cree Drive was his permanent residence while he was attending law school in Philadelphia.

-11-

Noble has offered no affidavit controverting the Liggins affidavit in any respect.  The uncontroverted facts in the record – – Paula Noble's confirmation on November 13, 2002 that Noble resided at 113 Cree Drive with her, and Noble's Cree Drive address listing on the University of Pennsylvania internet directory – – establish that 113 Cree Drive was Noble's permanent residence while he was away at school.[2]  Nor does Noble's affidavit deny that his mother accepted the papers from the process server, or that he received them via his mother, or that he received actual notice of the litigation.  In the absence of any claim that he never received actual notice, the rules of service are to be liberally construed.  Accordingly, the Cree Drive service in November 2002 was effective under Rule 4(e)(2).

    B.   Service at 3131 Walnut Street

     On May 13, 2003, a process server left a copy of the summons and complaint with Bowman, the concierge of Noble's apartment building in Philadelphia.  Bowman called Noble after accepting the papers and then Bowman "focused on" delivering the papers to Noble as soon as possible.  While Bowman did not say he recalled actually delivering the papers to Noble, Noble's affidavit does not attest that he did not receive the papers from Bowman or from another clerk or manager of the apartment building.  Nor does

---

    [2]  Noble also had a motor vehicle registered in his name at that address.

-12-

Noble present any evidence disputing that Bowman received the
papers.

Pennsylvania allows service by handing a copy of the papers
"at the residence of the defendant to the clerk or manager of the
hotel, inn, apartment house, boarding house or other place of
lodging at which he resides."  Pa. R. Civ. P. 402(a)(2)(ii).
Pennsylvania's intermediate appellate court has held that a
receptionist at the front desk of a Catholic mission where a
priest was residing fell within the category of "clerk of the
. . . place of lodging" for purposes of Pa. R. Civ.
P. 402(a)(2)(ii), even where the record did not establish that
the receptionist regularly received mail on behalf of the
residents of the mission.  See Aquilino v. Philadelphia Catholic
Archdiocese, 884 A.2d 1269, 1282-83 (Pa. Super. Ct. 2005)
(affirming the lower court's entry of default judgment against
the priest where there was no indication that the receptionist
was not the person who received mail on behalf of the mission's
residents).  Noble does not argue or establish that Bowman was
not a clerk for purposes of service under the Pennsylvania rule.
In the absence of other evidence, there is no apparent difference
between the receptionist at the mission in Aquilino and the
concierge at 3131 Walnut Street for purposes of service under the
Pennsylvania rule.  The evidence submitted establishes that the
3131 Walnut Street service complied precisely with the

-13-

Pennsylvania Rule of Civil Procedure 402(a)(2)(ii).  Accordingly,

regardless of whether actual notice resulted, service on Noble at

3131 Walnut Street on May 13, 2003 was effective.  <u>Noetzel v.</u>

<u>Glasgow</u>, 487 A.2d 1372, 1377-78 (Pa. Super. Ct. 1985) ("As long

as a method of service is reasonably calculated to give notice to

a defendant that an action is pending against him, the fact that

such defendant fails to receive actual notice does not invalidate

service on due process grounds.").

   C.   <u>Service at 724 Spruce Drive</u>

   On September 23, 2003, DaLonzo went to Noble's new

Philadelphia residence at 1624 Spruce Street, Apt. 1R.  DaLonzo's

uncontradicted factual assertion in his affidavit is that he

spoke to Noble over the telephone and delivered the summons and

complaint when Noble told DaLonzo to put the papers in the door

and he, Noble, would get them.  Noble's claimed lack of recall of

a conversation with DaLonzo does not rebut DaLonzo's assertion,

nor does realleging the legal conclusion that DaLonzo did not

"serve" him.  A naked refutation of a process server's affidavit

is insufficient to rebut the presumption of effective service

that a process server's affidavit establishes.  <u>See</u> <u>FROF, Inc. v.</u>

<u>Harris</u>, 695 F. Supp. 827, 829 (E.D. Pa. 1988).  Noble presents no

evidence or sworn factual assertions that DaLonzo did not speak

with Noble, that Noble did not instruct DaLonzo to put the papers

in the door, that DaLonzo did not put the papers in the door, or

-14-

even that Noble never received the papers that DaLonzo reported

leaving.  Under these circumstances, a liberal construction of

Rule 4(e)(2) is warranted.

The facts submitted demonstrate that service was effective

under Rule 4(e)(2)'s provision for personal service.  Even though

Noble did not open the door to take the papers from the process

server, personal service was effected nonetheless.  See

Villanova, 1998 WL 634686, at *2 (noting that "refusal to open

the door does not invalidate plaintiff's service"); Gambone, 2003

WL 21891584, at *4 (same); see also Electronics Boutique Holdings

Corp., 2001 WL 83388, at *9 (stating that "where a defendant has

actual knowledge that a lawsuit has been commenced against him,

he cannot assert a post-judgment defense of lack of personal

jurisdiction after willfully evading repeated attempts at

service").[3]

---

[3]  Noble has argued that service is ineffective because
DaLonzo has no idea to whom he spoke over the telephone at
Noble's residence.  Even if DaLonzo spoke to someone other than
Noble who answered Noble's residence telephone, service would not
necessarily be ineffective.  While Federal Rule 4(e)(2) requires
that papers be left with a suitable adult residing in Noble's
dwelling house, and there is no evidence here that a person other
than Noble was residing in Noble's apartment, Pennsylvania Rule
402(a)(2)(i) permits leaving the papers with an adult person "in
charge of" the residence.  In interpreting a parallel "in charge
of" requirement for service at a defendant's usual place of
business, "[t]he Pennsylvania Supreme Court has held that service
is effective if there is 'a sufficient connection between the
person served and the defendant to demonstrate that service was
reasonably calculated to give the defendant notice of the action
against it.'"  DirecTV, Inc. v. Baratta, No. Civ. A. 03-3265,
2004 WL 875541, at *2 (E.D. Pa. Mar. 22, 2004) (quoting Cintas

-15-

II.  SANCTIONS UNDER RULE 11

Rule 11 of the Federal Rules of Civil Procedure deems that a

signature on any paper presented to a court certifies that

> to the best of the person's knowledge, information or
> belief, formed after an inquiry reasonable under the
> circumstances, . . . that the claims, defenses, and
> other legal contentions therein are warranted by
> existing law or by a nonfrivolous argument for the
> extension, modification, or reversal of existing law or
> the establishment of new law; [and] the allegations and
> other factual contentions have evidentiary support
> . . . [and] the denials of factual contentions are
> warranted on the evidence . . . .

Fed. R. Civ. P. 11(b).  The rule "emphasizes the duty of candor

by subjecting litigants to potential sanctions for insisting upon

a position after it is no longer tenable."  Fed. R. Civ. P. 11(b)

advisory committee notes; see also Reynolds v. The U.S. Capitol

Police Board, 357 F. Supp. 2d 19, 24 (D.D.C. 2004) (finding

Rule 11 violated where plaintiff and counsel resubmitted the same

---

Corp. v. Lee's Cleaning Services, Inc., 700 A.2d 915, 920 (Pa.
1997) (interpreting the forerunner of current Pa. R. Civ. P.
402(a)(2)(iii)).  Applying the sufficient connection standard to
service at a defendant's residence, a court found service
effective when the summons and complaint were left with an
unrelated adult who answered the residence door and told the
process server that the defendant was out of town and would be
returning in a few days.  DirecTV, 2004 WL 875541, at *2 (finding
service effective under Pa. R. Civ. P. 402(a)(2)(i) and denying
motion to quash service).  Here, where a man answered Noble's
residence telephone as Noble and gave instructions to leave the
papers in the door so he could get them, the evidence establishes
a similarly sufficient connection.  This service was reasonably
calculated to give Noble notice of the action against him, and
Noble has offered no evidence to the contrary.

-16-

claims after having been put "on notice that the factual

allegations pled . . . were not sufficient").

Whether an attorney has conducted a reasonable inquiry under

Rule 11 is determined by an objective test, "'that is, whether a

reasonable inquiry would have revealed there was no basis in law

or fact for the asserted claim.'"  Id. at 23 (quoting Washington

Bancorporation v. Said, 812 F. Supp. 1256, 1275 (D.D.C. 1993)).

Furthermore, the court must determine if "the actions in question

were 'reasonable under the circumstances.'"  Saunders v. Lucy

Webb Haynes-Nat'l Training Sch. for Deaconesses and Missionaries,

124 F.R.D. 3, 7-8 (D.D.C. 1989) (quoting Westmoreland v. CBS,

Inc., 770 F.2d 1168, 1177 (D.C. Cir. 1985)).

Sanctions for failure to comply with the requirements of

Rule 11 should be imposed on the persons responsible for the

failure, whether it is the party or the attorney.  Fed. R. Civ.

P. 11(b).  The district court is accorded broad discretion to

determine whether sanctions are warranted, Allen v. Utley, 129

F.R.D. 1, 3 (D.D.C. 1990), on whom they should be imposed, Geller

v. Randi, 40 F.3d 1300, 1304 (D.C. Cir. 1995), and what form they

should take to "balance between equity, deterrence, and

compensation."  Reynolds, 357 F. Supp. 2d at 26 (quoting Hilton

Hotels Corp. v. Banov, 899 F.2d 40, 46 (D.C. Cir. 1990)); see

also Fed. R. Civ. P. 11(b) advisory committee notes ("The court

has available a variety of possible sanctions to impose for

-17-

violations, such as striking the offending paper; issuing an admonition, reprimand or censure . . . .").

Sanctions may be imposed on an attorney who interposes defenses on behalf of a client that are not warranted by existing law. Fed. R. Civ. P. 11(b)(2), (c). Existing law leaves no doubt that: (1) a person may have more than one dwelling house or usual place of abode for purposes of Rule 4(e)(2) and that a college student's permanent home address may well be his usual place of abode; (2) a clerk or apartment manager in Pennsylvania may accept service for a resident who dwells within the apartment house; and (3) personal service does not require hand-to-hand or face-to-face interaction and that a refusal to open the door does not invalidate service. Noble's legal contention that none of Ali's attempts at service were effective is not warranted by existing law.

Counsel may also be sanctioned for failure to conduct a reasonable inquiry of his client's factual contentions. Fed. R. Civ. P. 11(b)(3), (b)(4), (c). The rule requires counsel to do more than simply rest upon a client's evasive and incomplete statements of fact. A reasonable inquiry would provide counsel with either supporting evidence or a reason to decline to repeat a client's assertion. Under the circumstances here, it appears that counsel did not make reasonable inquiries at minimum about whether Cree Drive was Noble's permanent home address in November

-18-

2002, and whether his mother received papers from Liggins there.

Counsel was on notice from the November 24, 2004 order that bare

legal assertions of inadequate service were insufficient and that

he was required to respond with factual particularity to all of

the process servers' factual contentions.  Yet, counsel submitted

an affidavit from Noble that was almost contemptuously non-

compliant, reciting spare and selective facts about his non-

permanent residences and paroting the legal position that he was

never served.

     The holes in Noble's position and the studied ambiguity in

his affidavit beg for factual explanations.  Counsel was

obligated to conduct sufficient inquiry to assure that fact-based

legal contentions are well-grounded in fact and warranted by

existing law.  The evidence shows that Noble has played a cat and

mouse game in order to evade the jurisdiction of the court.

Counsel's exact role in Noble's conduct is not plain from the

submissions, but it necessarily amounts at least to a failure to

conduct the required reasonable inquiry under the circumstances

and a failure to restrict legal contentions to those warranted by

existing law.  Fed. R. Civ. P. 11(b).[4]

_____

     [4]  Wholly aside from whether Noble did help swindle an
ailing widow out of her home, it is a dangerous and ignominious
start to a legal career for Noble to engage in such disingenuous
and ultimately ineffective evasion of service.  His counsel, as
an officer of this Court, should be chary to abet Noble's
continuing wily behavior in litigation pending before a Court.

-19-

Ali has incurred unnecessary costs and prejudicial delay from Noble's insupportable failure to respond as required to the service of the summons and complaint.  Accordingly, Ali's motion for sanctions will be granted in part and Noble's counsel will be admonished.  Noble and his counsel are warned that any further delays attributable in whole or in part to any continued baseless assertion that Noble was not served may result in the imposition of monetary sanctions.

## CONCLUSION AND ORDER

Ali effected service on Noble three times – – first in November 2002, again in May 2003, and again in September 2003. Noble has failed to answer the complaint.  Accordingly, a judgment of default and order for rescission of the sale of the Southeast Washington D.C. property, will be entered unless Noble files an answer in compliance with Local Civil Rule 7(g) on or before January 17, 2006.   It is further

ORDERED that plaintiff's motion for sanctions [# 51] be, and hereby is, GRANTED in part and DENIED in part.  Noble's counsel, Stephen J. Williams, is hereby admonished for his role in Noble's failure to respond as required after Noble was served with the summons and complaint by making factual assertions that were not based on a reasonable inquiry or supported by the evidence, and by making fact-based legal arguments that were not based on a reasonable inquiry into the facts and not warranted by existing

-20-

law.  Plaintiff's motion for sanctions is DENIED in all other

respects.

SIGNED this 6th day of January, 2006.


                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge